UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

DEREK JONES,

Defendant.

No. 21-CR-59 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Derek Jones's motion, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, to transfer venue to the Central District of California.[1] The Government opposes the motion.[2] For the reasons below, Mr. Jones's motion is DENIED.

## I. Background

On January 28, 2021, a grand jury in this District indicted Mr. Jones on three counts: (1) one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and (2) two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), (c)(5), and 2. (See Indictment, dated Jan.

[1] (See Notice, dated May 25, 2021 [dkt. no. 26]; see also Attorney Declaration ("Marvinny Decl."), dated May 25, 2021 [dkt. no. 27]; Derek Jones's Memorandum of Law in Support of His Motion to Transfer Venue to the Central District of California ("Def. Br."), dated May 25, 2021 [dkt. no. 28]; Derek Jones's Reply Memorandum of Law in Support of His Motion to Transfer Venue ("Def. Reply"), dated June 15, 2021 [dkt. no. 35].)

[2] (See Government's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue ("Gov't Opp."), dated June 8, 2021 [dkt. no. 33].)

28, 2021 [dkt. no. 2], ¶¶ 6, 8, 10).  On the wire fraud count, the Indictment charges Mr. Jones with running an investment-fraud scheme by soliciting investments in entities he controlled--most notably, BlueRidge Realty, a purported real estate development and investment firm, and Realize Holdings, a supposed venture capital firm--and then misappropriating the invested funds.  (See id. ¶¶ 1-3.)  As for the identity-theft counts, the Indictment charges that, "[d]uring and in relation to the investment fraud scheme," Mr. Jones sent emails in two former employees' names to "foster the illusion that [Mr. Jones's] companies were viable operations with real employees." (Id. ¶ 5.)  The Indictment alleges conduct "in the Southern District of New York and elsewhere."  (Id. ¶¶ 6, 8, 10).

On February 9, 2021, Mr. Jones was arrested, pursuant to a warrant issued in this District, at his home in California. (See Marvinny Decl. ¶ 3.)  Mr. Jones "was presented that same day in the Central District of California," (id. ¶ 3), although he was arraigned telephonically the next day before this Court, (see id. ¶ 4).  At that time, counsel from Federal Defenders of New York was appointed to represent him.  (See id.)  Mr. Jones also appeared remotely for a May 4, 2021 status conference. (See id.)  Trial in this matter is scheduled to begin November 1, 2021.  (See Transcript of Conference, dated May 4, 2021 [dkt.

no. 24] at 7:25.) Pursuant to an agreed-upon schedule, Mr. Jones filed this motion on May 25, 2021. (See Notice at 1.)

## II. Legal Standard

"Upon the defendant's motion, the court may transfer the proceeding . . . against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." FED. R. CRIM. P. 21(b). When evaluating a motion to transfer, courts consider the ten factors enumerated in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 243–44 (1964):

> (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer . . . .

United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990). "The convenience of any victim must also be considered."[3] "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which

[3] United States v. Blondet, No. S5 16-CR-387 (JMF), 2019 WL 5690711, at *2 (S.D.N.Y. Nov. 4, 2019) (quotation marks omitted); see also FED. R. CRIM. P. 21(b) advisory committee's note to 2010 amendment ("This amendment requires the court to consider the convenience of victims . . . .").

factors are of greatest importance." Maldonado-Rivera, 922 F.2d at 966 (cleaned up). In other words, "[d]isposition of a Rule 21(b) motion is vested in the sound discretion of the district court." United States v. Stein, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006).

There is, however, a "general rule that a criminal prosecution should be retained in the original district." United States v. Kirk Tang Yuk, 885 F.3d 57, 74 (2d Cir. 2018) (quotations marks omitted). The rationale for that rule is simple: "It is the government who bears the burden of proof, and in putting on its case in chief, it is the government that must organize and present the majority of the evidence and witnesses at trial." United States v. Ebbers, No. S4 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *2 (S.D.N.Y. Oct. 18, 2004). Consequently, "[t]he defendant . . . bears the burden of justifying transfer in light of the Platt factors," and "[t]hat burden is not often or easily met." United States v. Larsen, No. 13 Cr. 688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014). Unsurprisingly, "there has been a trend in recent years away from granting transfers pursuant to Rule 21(b)," due in no small part to "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades." Blondet, 2019 WL 5690711, at *2 (quotation marks omitted).

## III. Discussion

Mr. Jones asserts that this case should be transferred to the Central District of California because "every Platt factor favors transfer." (Def. Br. at 3.) The Government counters that "none of the relevant [Platt] factors counsels sufficiently in favor of a transfer to overcome the general rule, which favors the continued prosecution of this case in the Southern District of New York." (Gov't Opp. at 6.) The Court considers each of the Platt factors below, bearing in mind the rule that criminal prosecutions generally are to be tried in the District where the charges are filed. See Kirk Tang Yuk, 885 F.3d at 74.

### a. Location of the Defendant

The first Platt factor slightly favors transfer. Mr. Jones indisputably resides in Los Angeles County,[4] although that fact "has no independent significance in determining whether transfer to that district would be in the interest of justice." Platt, 376 U.S. at 245 (quotation marks omitted). At the same time, two of Mr. Jones's alleged victims (one of whom is a potential witness) are residents of New York, and Rule 21 also requires

[4] See, e.g., United States v. Blakstad, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020) ("Although not dispositive, the first Platt factor weighs in Blakstad's favor, as he currently resides in San Diego."); United States v. Spy Factory, Inc., 951 F. Supp. 450, 456 (S.D.N.Y. 1997) ("[T]he fact that all defendants reside in San Antonio weighs in favor of the transfer of venue, absent other countervailing considerations.").

the Court to consider the convenience of "any victim." FED. R. CRIM. P. 21(b). While it certainly would be more convenient for Mr. Jones to face trial in Los Angeles, the same can be said for at least two victims in this District. In any event, defendants who reside elsewhere frequently face trial in this District, and "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer." United States v. Avenatti, No. 19 CR. 374 (DAB), 2019 WL 4640232, at *2 (S.D.N.Y. Sept. 24, 2019).

In addition to his residence, Mr. Jones also points to his family commitments and his obligations to care for his children as factors favoring transfer. (See Def. Br. at 4-5.) Although the importance of those obligations is not lost on the Court, the fact of the matter is that "[e]very life is significantly disrupted during a trial wherever it is held." United States v. Wilson, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001). During trial, Mr. Jones will be in court for much of the day, which necessarily will prevent him from monitoring his children's remote schooling or participating in extra-curricular activities. Moreover, as numerous judges in this District have recognized, during trial "the evenings and weekends are usually consumed analyzing the evidence that has

been admitted and preparing for the remainder of the trial."[5] In other words, even if this case is tried in California, there is a strong likelihood that the children would need to be in Mr. Jones's ex-wife's custody during the trial anyway, and Mr. Jones does not suggest that his ex-wife cannot properly care for their children. Finally, though the Court is mindful of Mr. Jones's pending family court case in Los Angeles, Mr. Jones has not offered any facts to suggest that he will lose custody of his children or otherwise be unable to participate in the custody proceedings if trial is held in this District. That is especially true because the family court judge has already denied at least one application to terminate Mr. Jones's custodial rights based on the criminal charges he faces here. (See Def. Reply at 2.)

**b. Location of Witnesses**

The second factor, on the other hand, is neutral. Although Mr. Jones has identified several potential witnesses who reside in California,[6] he does not suggest that those witnesses "would

---

[5] Wilson, 2001 WL 798018, at *3 (Cote, J.); accord, e.g., Stein, 429 F. Supp. 2d at 645 (Kaplan, J.); United States v. Christian, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (Forrest, J.); Larsen, 2014 WL 177411, at *3 (Furman, J.).

[6] The Court received, in camera, a list of twenty-four prospective witnesses that Mr. Jones may call. Of those, the lion's share are fact-only witnesses, while some are both fact

(continued on following page)

be unable to testify in this District." Blondet, 2019 WL 5690711, at *2 (emphasis added). In light of that, the mere fact that "witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer," Spy Factory, 951 F. Supp. at 456, especially because technology now enables witness preparation to be done via videoconference or telephone. Nor are Mr. Jones's witnesses the only ones who will testify in this trial. The Government has proposed at least two New York-based witnesses, and it alleges numerous victims not only in California but also Massachusetts, North Carolina, Oklahoma, Florida, and abroad. (See Gov't Opp. at 9-10.) The Government would of course bear the expenses for making those witnesses available for trial, and, as will be shown more thoroughly below, Mr. Jones's indigency will prevent him from having to pay witness expenses that he cannot afford.

**c. Location of Events**

The third factor is likewise neutral. Although Mr. Jones conducted many of his affairs from and in Los Angeles, the conduct at issue in this case is not confined to California.

---

(continued from previous page)
and character witnesses. The list contains no character-only witnesses. The majority of the fact witnesses will purportedly testify about various of the projects that Mr. Jones's companies supposedly invested in. It is unlikely in the extreme that three or four witnesses would be permitted to testify about a single project. Thus, the Court discounts the number of proffered witnesses.

For example, the indictment charges conduct related to a property located in Washington State. (See Indictment ¶ 2a.) And, as mentioned above, Mr. Jones allegedly sought investments from and communicated with people around the country, including in this District and many locations on the East Coast that are closer geographically to New York than to California. Moreover, the Government also represents that "key interstate bank wires originated in New York." (Gov't Opp. at 9-10.) At base, "[b]ecause the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side."[7]

**d. Location of Documents**

The fourth factor counsels against transfer. As Mr. Jones concedes, "[t]he Government has produced voluminous discovery in electronic format"--from this District no less--and those "documents can be accessed just as easily in Los Angeles as in New York." (Def. Br. at 9.) Those documents can, of course, be shared with potential witnesses and counsel, regardless of their location. Although Mr. Jones's counsel suggests that "the majority of the defense's investigation, including efforts to obtain relevant documentation, will need to be conducted in the

[7] Spy Factory, 951 F. Supp. at 457; see also Blakstad, 2020 WL 5992347, at *4 (finding third factor to be neutral where some alleged conduct occurred in California, New York, and Florida).

Los Angeles area," counsel identifies no documents that he has been unable to obtain from New York. (Id.) Indeed, Mr. Jones very likely has access to many of the documents related to BlueRidge Realty and Realize Holdings due to his involvement with both ventures. In short, "given technology and the ease of travel, such inconvenience does not suffice in this day and age." United States v. Chait, No. 17-CR-105 (JMF), 2017 WL 6502228, at *1 (S.D.N.Y. Dec. 18, 2017).

**e. Potential Disruption of Defendant's Business**

The fifth factor is, at best, neutral. Mr. Jones avers that he "is active in multiple business endeavors in the Los Angeles area" and that one of his ventures (a food hall) will, "over the next 12 months[,] require nearly constant hands-on work, and oversight, by him to ensure its success." (Def. Br. at 10.) But Mr. Jones overlooks the fact that he won't exactly be swimming in free time if the case is transferred. As the Court has already recognized, "[b]esides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of the trial." Wilson, 2001 WL 798018, at *3. That will severely curtail Mr. Jones availability for outside business activities. If anything, as the Government points out, "a trial in New York would offer defendant the added benefit of concluding by approximately 2:00 p.m. California time, allowing

for the defendant to attend afternoon meetings remotely." (Gov't Opp. at 13.) Although the Court recognizes that remote check-ins are not a perfect substitute for in-person involvement, the COVID-19 pandemic has shown that a wide variety of business activities can be conducted remotely.

**f. Expenses to the Parties**

The sixth factor weighs against transfer. Transferring this case to California will undoubtedly result in increased expense to the Government, which would be forced either to (1) transport existing counsel, investigators, and support staff to California to try the case or (2) reassign the case to prosecutors in the local United States Attorney's Office "who are wholly unfamiliar with it and who played no role in its investigation." United States v. Pastore, No. 17-CR-343 (NSR), 2018 WL 395490, at *5 (S.D.N.Y. Jan. 11, 2018). As for Mr. Jones, he has already been found to be indigent and to qualify for appointment of counsel. As a result, "one way or another," Mr. Jones "will not have to bear" his "expenses involved in traveling to, and staying in, this District for trial."[8]

---

[8] Larsen, 2014 WL 177411, at *3. The Court is mindful that, in the ordinary course, "defendants represented by Federal Defenders of New York do not petition the Court for costs, unlike defendants represented by CJA counsel." (Def. Reply at 8 n.4.) However, "[i]n the event that Federal Defenders cannot pay for [Mr. Jones] (or his witnesses) to travel to, and stay in, this District for trial, [Mr. Jones] may apply for an order

(continued on following page)

Likewise, as the Government represents, certain investigative expenses will also not have to be borne by Mr. Jones. (See Gov't Opp. at 11-13.) Consistent with that representation, should the Federal Defenders not be able to pay for necessary investigative expenses, counsel "may apply for an order requiring the Government to pay those expenses."[9] In short, because Mr. Jones is indigent, the Government will bear the brunt of the financial burden regardless of where this case is tried. Accordingly, this factor supports keeping the case here.

**g. Location of Counsel**

The seventh factor also "cuts against transfer." Larsen, 2014 WL 177411, at *3 n.4. Here, the Government's attorneys are based at the United States Attorney's Office for the Southern District of New York, and Mr. Jones's counsel is from Federal

(continued from previous page)
requiring the Government to pay those expenses." Larsen, 2014 WL 177411, at *3 n.3; cf. Spy Factory, 951 F. Supp. at 464 (conditioning "the denial of the transfer motion on the Government's representation to make available to the defendant, upon a good faith showing of need, reasonable funds for transportation to New York City and for subsistence for the defendant and witnesses residing in the alternate venue whom he may reasonably call in his defense" (cleaned up)).

[9] Larsen, 2014 WL 177411, at *3 n.3; see also FED. R. CRIM. P. 17(b) ("Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.").

Defenders of New York. Although Mr. Jones's counsel was appointed in this matter, counsel has worked on this case from its outset (save for Mr. Jones's initial appearance). While defense counsel's presence in New York may make it more difficult for Mr. Jones to meet and confer with his attorney in person, the benefits of a transfer must be balanced against the costs. Transferring this case would require the appointment of California-based counsel for Mr. Jones, which would almost certainly result in increased costs and delay for the newly-appointed attorney to familiarize himself or herself with the case and with Mr. Jones. See Pastore, 2018 WL 395490, at *5. Moreover, as the Court has already recognized, transfer to California would also increase costs for the Government. In short, as all the current "attorneys are based in New York . . . , this factor suggests that keeping trial in Manhattan will be less costly and more convenient for the parties." Blakstad, 2020 WL 5992347, at *5.

**h. Accessibility of Trial Location**

"The eighth factor, relative accessibility of the venues, is neutral." Id. New York and Los Angeles are two of the most accessible locations in the United States, especially considering the marvels of modern air travel and other public transportation. See, e.g., Stein, 429 F. Supp. 2d at 645.

**i. Docket Conditions**

The ninth factor favors this case remaining in this District. This Court is available to try this case in November 2021, and the Southern District of New York safely has held numerous jury trials already this year notwithstanding the COVID-19 pandemic. By contrast, assuming the Central District of California has been able to hold jury trials as planned since June, the Court has no information regarding how those trials are being conducted, how trial dates are confirmed, how many jury trials can be held at once, etc. Additionally, based on Mr. Jones's representations, the Central District of California experiences more case filings per judge--with comparable (albeit slightly fewer) criminal filings per judge--than this District. (See Def. Br. at 13.) In essence, to transfer the case would trade certainty of an available trial date for the mere possibility that a trial could occur without significant delay. That counsels against transfer.[10]

**j. Other Relevant Circumstances**

Finally, the tenth factor also does not support transfer. For this factor, Mr. Jones primarily relies on the ongoing COVID-19 pandemic, which he points out makes travel somewhat

---

[10] See Stein, 429 F. Supp. 2d at 645-46 ("[T]his Court already has scheduled trial in this case, ensuring that defendants will receive ample attention regardless of docket conditions.").

more difficult and limits the opportunities for in-person interaction with his counsel. (See Def. Br. at 14.) The Court recognizes those difficulties but still finds transfer unwarranted. Under the CARES Act, Mr. Jones will be able to appear remotely for almost all proceedings in this matter except for trial,[11] which will allow him to maintain his parenting responsibilities and minimize travel expenses. Indeed, it has become standard practice to conduct most criminal proceedings via video or teleconference--even if the defendant and counsel are located in the District--and Mr. Jones has already twice appeared remotely in these proceedings. And although Mr. Jones and his counsel may not yet have met in person, Mr. Jones does not suggest that they are not otherwise able to communicate freely via telephone or videoconference. Although trial preparation may, understandably, be more difficult via remote conferencing, it is by no means impossible.

## IV. Conclusion

In sum, although some of the Platt factors favor transfer, most others do not. Given the baseline rule that criminal

[11] See Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 15002(b)(1), 134 Stat. 281, 528 (2020) (authorizing the use of video conferencing for, among other things, (1) "Initial appearances under Rule 5 of the Federal Rules of Criminal Procedure," (2) "Arraignments under Rule 10 of the Federal Rules of Criminal Procedure," and (3) "Appearances under Rule 40 of the Federal Rules of Criminal Procedure").

prosecutions generally are to be tried in the District in which the charges are filed, the Court finds that Mr. Jones has not carried his burden to show that fairness requires transfer. Accordingly, Mr. Jones's Rule 21(b) motion to transfer venue to the Central District of California [dkt. no. 26] is DENIED. The Clerk of the Court shall close the open motion.

The parties shall confer and propose, by letter, a scheduling order for any remaining pre-trial motions, motions *in limine*, *etc.* The Court notes that the Government proposed such a schedule on August 4, 2021, which defense counsel understandably did not join due to the then-pending motion for transfer. (*See* Letter, dated Aug. 4, 2021 [dkt. no 36] at 1.)

**SO ORDERED.**

Dated: August 5, 2021
New York, New York

LORETTA A. PRESKA
Senior United States District Judge